Good morning, Your Honor, and may it please the Court. I represent Nicholas McDonald. Although I have filed an appeal of the decision below on the motion to suppress, I would just like to confine my oral remarks here to the sentencing issues and rely on the brief for the motion to suppress. That being said, I would briefly indicate that on April 5, 2013, that local police stopped a vehicle on a highway in Maine, and as the vehicle was coming to a stop, the passenger, the appellant, leapt out of the vehicle and fled into the woods. He was subsequently apprehended and arrested and brought to jail, where the jail wouldn't accept him because of his mental condition at the point he seemed to be upset and incoherent. He was then taken to a hospital where he was handcuffed to a gurney and sedated. Now, as to the first issue that we I will indicate that as of April 5, the authorities had in their possession some 8 grams of Suboxone taken from the defendant's of heroin that were seized that evening from his prison at the hospital. Based on that, with that quantity of drugs, somewhere in the month of May, the authorities conducted a proffer of a cooperating individual who gave testimony implicating Mr. McDonald in a number of other drug on the same series of events, but the substance of the testimony, and particularly the amount of drugs involved, varied markedly from the profit testimony. In June of 2013, Mr. McDonald was indicted for the possession with intent to distribute narcotics on April 5, 2013, in the The indictment dealt specifically with the April 5 incident? Yes. In which he had some heroin that was taken from him at the hospital? That's correct, sir. As well as some smaller amount of Suboxone that either came from him, I don't think at the hospital, I think that was when he was arrested and actually when they seized him in the woods. When he ran from the car? Yes, yes. But those were, now what transpired was after the, in due course, the motion to suppress was heard and denied, and the and used as relevant conduct, the drugs that the cooperating individual told about that, as well as the 26 grams of narcotics. Did the police ever actually have the additional drugs, or was this based only on the statements from the cooperating witness that this guy had been a dealer on a regular basis and she had driven him to Boston to pick up drugs? They had no drugs, judge. The only drugs were the seizures on April 5. All that was was her testimony regarding these events that had occurred. And how many drugs did she attribute to the defendant, and how many trips, so on and so forth? I believe it was, she testified to three trips, and there were a total, I believe it was 90 grams, and then, which subsequently was, the probation department discounted her quantity estimate, and then the district judge further discounted the quantity estimate. All right, so then your argument doesn't go to the calculation of the quantity of drugs, is that correct? It goes to the fact that she was not trustworthy enough to provide a basis for a relevant conduct finding? Well, I've been trying to understand what the core of your argument is. She was completely untrustworthy. I believe she was an addict herself. She had some criminal difficulty arising out of this matter, which would certainly motivate her to say anything she perceived that the authorities wanted to hear. And she was completely unreliable. And in addition to that, she was giving testimony on something that was not, it was more in the nature of bad conduct by the defendant rather than relevant conduct. Why wasn't it relevant? Wasn't it around the same time period? Well, it was historical. It was before. But whether or not it actually happened is only something that one could get from reading a transcript of her testimony. There was no corroboration whatsoever. But when you say no corroboration, how do you explain the quantity of drugs that were found on him, the cash, his habit, and the funding of his habit, and then throw in the testimony from others that he had gone to Boston to get drugs? Doesn't all that establish there must have been some other quantity of drugs that he was dealing, or at least it's not an abuse of discretion for the court to have so found? I suppose either. I would say either dealing or using. I mean, I'm not going to stand here and say that he was a first-time offender who was just trying this out on a lot. But that's not, there was no evidence, and certainly no reliable evidence other than this cooperator's testimony, which was used to elevate his drug quantity beyond the 26 grams which were found on him on April 5th. What about White's statement that she drove him to Massachusetts to pick up drugs? The statement didn't, he wasn't indicted for a course of conduct that encompassed that. He wasn't indicted for over a, from January to April of 2013 in various places in Massachusetts and in Maine, he did possess with intent to distribute narcotics. He was indicted for possession with intent to distribute narcotics on April 5th. And that was, that was that. And so it is, and I've cited this court's opinion in Miranda that, to suggest that, well, that seems to me to be an outer limit on reliable conduct that could be used, that could be used to elevate someone's defendant's sentence. And this is far short of that. And then, in addition, I see that. Yes, your time is up. Thank you. I'm Margaret McGoy for the United States. Unless the court has questions about the other issues, I will confine my remarks to the relevant conduct determination. I would start by pointing out that this determination is reviewable only for clear error, which means that this court must be left with a strong, unyielding belief that a mistake has been made. And let me put the relevant conduct determination in the context of the record here. There were two amounts that were not challenged at all. One was the .84 grams of Suboxone, and the second was, those were seized from him at the time of the arrest, to answer your question, Judge Lynch. The second was 26.4 grams of heroin that was seized from him at the hospital. And then the third was what I read the record to be adding another 70.5 grams of heroin based on two forms of information from a cooperating informant. There was a statement, and then there was grand jury testimony under oath. And what the witness said was that for the three-month period between April and, I'm sorry, February and April when the defendant was arrested, she described transactions between the defendant and five other people in which she was a party, including three trips to Massachusetts. And based on all of that, the pre-sentence report took what the government views as a very, very conservative approach to this information. When there was a choice of ranges of drug amounts, the pre-sentence report attributed to the defendant the lowest amount. When there was a range of prices that the defendant charged, the pre-sentence report took the lowest price and converted that price into a drug quantity. When there were differences between the witness's statement and the witness's grand jury testimony, the pre-sentence report took the lower amount in either event. And there was some conduct that was omitted altogether. For example, the witness testified that the defendant traded a gun for drugs. That wasn't included in the calculation at all. For its part, the court took an equally conservative approach. First of all, it applied the Holder Amendment, even though it had not yet taken effect. And then it specifically said that although it did credit the informant's information, the court was aware that the amounts that the informant gave put the additional quantities on the cusp of two different offense levels. And out of an abundance of caution, the district court applied the lower base offense level. So it reduced the amount from 60 to 80 kilograms of marijuana equivalent to 40 to 60 grams of marijuana equivalent. I have a question at some point. My question is, is there a policy reason why if the government has this evidence, that they don't actually bring charges so that there is a trial and this can be decided according to the usual way that criminal cases are decided? Rather than rely on enhancing the sentence, which is not at trial. I am fully aware that some members of the court take a very dim view of the relevant conduct determinations. And take a dim view of whether that should be charged and proven beyond a reasonable doubt rather than proven by a preponderance of the evidence. I have two responses to that. One is in terms of what the law is, the law permits the government to do that. Is it a preponderance of the evidence standard? But as a policy matter, the government is always put in the position of deciding whether to bring criminal charges against an informant and whether or not to go instead against what it perceives to be the major supplier. And I think it is a fair inference from the reading of this record that the government made a choice not to prosecute the informant, to take her testimony under oath. In the government's view, the oath is quite a sobering effect on any witness. The government did not charge her, but in fact used her reliable information, which the district court specifically credited, to enhance the drug quantity. When you say reliable, that is the issue here. Was it reliable? The district court never saw her testify, so we don't have that issue of having a court have seen the witness. Instead, we've got two statements by this witness which contain a very large number, it seems to me, of material inconsistencies. So you're left with two conclusions. One is she's just imprecise about all the stuff, so I'll be, as you say, conservative and take the lower amounts. Or the other is you just can't believe a witness like that. How do you draw the line between the two, other than are we just supposed to say we always defer to the district court judge? Well, I think in this instance you can have a certain level of confidence because there were significant aspects of the informant's information that were corroborated by other means. One aspect of it was that she said that the defendant had a safe and a gun, and in fact the officers found a safe and a gun. And a safe and a gun are tools of the trade of drug trafficking. Second is the jailhouse call that the defendant made after he had been arrested, in which there were two components of that that were relevant. One was he said he was just coming down from a five to six gram a day habit. And the second was he tried to get someone to lie about the safe. So that's a second form of corroboration. How does that corroborate that they took a trip to Boston or New York? Well, we certainly can't on a preponderance standard be held to tack down every detail of the informant's information, but when there are significant details that are corroborated by other means, I think this court in that position must defer to the credibility determination of the district court unless it is left with a strong and unyielding conviction that a mistake has been made. To return to the corroboration, a third means by which this informant's information was corroborated was by the defendant's criminal record. He had 12 or 13 adult convictions, at least six of which were drug related. So there was a lot of reason to believe that this man was involved in drug trafficking on a regular basis. And then the fourth was the defendant's financial status. He was unemployed, he was receiving $678 a month in disability payments, and yet he admitted that he had a drug habit that cost him $1,000 to $4,000 a week. Well, it is, I think, can be determined to be a matter of common sense that he had to be getting the money to pay for that habit somewhere. And that somewhere, it is a reasonable inference, was from his drug trafficking. So this is not a situation where there is simply a bald statement by an informant where there is no corroboration. There is significant corroboration in this event. The other thing that I would like to point out, just to put the court at ease about the relevant conduct determination, and that is the sentence the defendant received. There were two counts of the indictment. One was the drug count in which the quantity determination was significant, but the second was the firearms charge, in which the quantity determination had no role whatsoever. The district court in this case imposed two concurrent 75-month sentences. So even if the defendant had not committed a crime, the district court had no role whatsoever. Even if this court has pause about the relevant conduct determination, it doesn't affect the outcome of this case because of the concurrent 75-month sentence. I'd be happy to answer other questions from the court. Otherwise, the government will rest on its brief and urge the court to affirm in all respects. Thank you. Thank you.